**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

KENO RAMSEY,

                                    Plaintiff,

            v.

                                                    No. 9:22-CV-265
PATRICK REARDON, et al.,                            (TJM/CFH)

                                    Defendants.


───────────────────────────────


**APPEARANCES:**                        **OF COUNSEL:**

Keno Ramsey
21-B-0692
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541
Plaintiff pro se

Attorney General for the              ALEXANDER POWHIDA, ESQ.
State of New York                     Assistant Attorney General
The Capitol
Albany, New York 12224
Attorneys for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff pro se Keno Ramsey ("plaintiff"), who was at all relevant times in the

custody of the New York State Department of Corrections and Community Supervision

("DOCCS") at Marcy Correctional Facility ("Marcy C.F."), brings this action pursuant to

42 U.S.C. § 1983, alleging that defendants Correctional Officer ("C.O.") Dunn, C.O. R.

───────────────

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Kessler, Superintendent Patrick Reardon, Deputy Superintendent of Mental Health

Danielle[2] C. Medbury, C.O. Joseph Russo, Lieutenant Pyke, C.O. Seth[3] Carpenter, Ms.

Brown, Ms. Davis, John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John

Doe #6 violated plaintiff's constitutional rights under the First and Eighth Amendments.

See Dkt. No. 1 ("Compl."); see also Dkt. No. 6 at 59.[4]  Defendants Reardon, Medbury,

and Carpenter (collectively, "defendants") move to dismiss plaintiff's First Amendment

mail tampering and Eighth Amendment sexual abuse claims pursuant to Federal Rule of

Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).  See Dkt. No. 30.  Plaintiff has not

responded.  For the following reasons, it is recommended that the motion be granted.


## I.  Factual Background

Plaintiff alleges that he "sen[t] out 36 grievance[s] and none of [his] grievance[s]

being file[d] or document[ed.  His] mail is being throw[n] away[.]"  Compl. at 11.[5]  He

asserts that "the mail is being tamper[ed] with" and when he puts his mail in the hands

of "CO Kessler, CO Dunn, [and] John Doe," "it come[s] up missing from inhouse and

outgoing mail."  Id. at 16.  He is "missing over 60 mail."  Id.  He contends that Medbury,

the Deputy Superintendent of Mental Health at Marcy C.F., and Reardon, the

Superintendent of Marcy C.F., "known about the guard throwing away [his] mail[.  He]

sent them [a] letter and even tell them but nothing done because they or covering up

---

[2] Plaintiff named "D. Medbury" in his complaint.  Compl. at 3.  In the motion to dismiss, Medbury's full name is identified as Danielle C. Medbury.  See Dkt. No. 30-1 at 3.
[3] Plaintiff named "Carpencer" in his complaint.  Compl. at 7, 16.  In the motion to dismiss, he is identified as Seth Carpenter.  See Dkt. No. 30-1 at 3.
[4] Citations are to the pagination generated by CM/ECF in the header of each page.
[5] The undersigned relays only those facts from plaintiff's complaint that are relevant to the motion to dismiss.

everything . . . ."  Compl. at 16; <u>see also</u> Dkt. No. 30-1 at 4.  He states that "the supervisors" such as Reardon and Medbury are "making these unconstitutional things happening.  [A]nd there is a big cover up of employees['] unprofessional conduct and misconduct.  [T]hey work together to cover up criminal action that happening."  <u>Id.</u> at 9.  Plaintiff attaches numerous grievances to his complaint.  As relevant here, he wrote two grievances, one titled "grievance" and another titled "Superintendent," dated October 23, 2021, both of which concern the alleged mail tampering.  <u>Id.</u> at 23, 25.  He did not name any individual officers or officials in the letters.  <u>See id.</u> at 23, 25.

At the end of his complaint, plaintiff names Medbury and writes, "[t]he mail box should have a lock on the box and have a mail room officer to handle the mail, so that my mails and other individual stop coming up missing."  Compl. at 44.  He also names Reardon and states, "I have all my copies of grievance I try to file and need to get permission to send to CORC to exhaust[] Administrative remedy[.]"  <u>Id.</u>  He asserts that "there should be a small grievance box with a lock and the mail room officer should be the only one with the key and the grievance clerk should be remove her 1 years is over." <u>Id.</u>

Next, plaintiff alleges that defendant Ms. Davis, a mental health worker, forced him to masturbate in front of her and he watched her let another prisoner do the same. <u>See</u> Compl. at 6, 16.  He contends that he reported this to Carpenter, who "did no investigation[.]"  <u>Id.</u>  A few weeks later, Ms. Davis asked again, and he started a sexual relationship with Ms. Brown, another mental health worker, but did not want to.  <u>See id.</u>

Based on these allegations, Senior District Judge Thomas J. McAvoy permitted First Amendment mail tampering claims against Medbury and Reardon, and an Eighth

Amendment sexual abuse claim against Carpenter to proceed beyond initial review. See Dkt. No. 6 at 59.

## II. Motion to Dismiss Standard[6]

As an initial matter, "[p]laintiff's failure to respond to the motion to dismiss does not relieve the Court of its obligation to consider the merits of plaintiff's claims." Arena v. Irondequoit Police Dep't, 228 F. Supp. 3d 242, 243 (W.D.N.Y. 2017); see also Mobley v. Crane, No. 9:21-CV-299 (BKS/ATB), 2021 WL 5813689, at *2 (N.D.N.Y. Nov. 3, 2021), report and recommendation adopted, 2021 WL 5810406 (N.D.N.Y. Dec. 7, 2021). "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." Arena, 228 F. Supp. 3d at 243 (quoting McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000)); see also Goldberg v. Danaher, 599 F.3d 181, 183 (2d Cir. 2010) ("Because a motion under Rule 12(b)(6) presents a pure legal question, based on allegations contained within the four corners of the complaint, the district court is equipped to make a determination on the merits[]" even if a party does not respond.). However, plaintiff's failure to respond is not without significance. Under the Court's Local Rules,

> [w]here a properly filed  motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

L.R. 7.1(a)(3).

---

[6] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Darby v. Greenman, 14 F.4th 124, 127 (2d Cir. 2021) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  "Courts are 'obligated to construe a *pro se* complaint liberally.'"  Tafari v. McCarthy, 714 F. Supp. 2d 317, 339 (N.D.N.Y. 2010) (quoting Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)).  "However, 'the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  Id. (quoting Iqbal, 556 U.S. at 678); see also Nat'l Rifle Ass'n of Am. v. Vullo, 49 F.4th 700, 713 (2d Cir. 2022) ("We accept as true factual allegations but not conclusions, such as statements concerning a defendant's state of mind."); Darby, 14 F.4th at 127 (citations and quotation marks omitted) (first and second alterations in original) ("[A] complaint that merely tenders naked assertions devoid of further factual enhancement fails to meet this standard, as do unadorned, the-defendant-unlawfully-harmed-me accusation[s][.]").

## III.  Analysis

Defendants move to dismiss plaintiff's complaint against them under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" because "[p]laintiff

has failed to allege that the[y] . . . were personally involved in the purported deprivation of [p]laintiff's constitutional rights."  FED. R. CIV. P. 12(b)(6); Dkt. No. 30-1 at 3.

"It is well settled in th[e Second] Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  "A supervisor may not be held liable under [§] 1983 merely because his subordinate committed a constitutional tort."  Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

> Before deciding *Ashcroft v. Iqbal*, 556 U.S. 62 (2009), the Second Circuit held that supervisory personnel could be considered "personally involved" if
>
> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Hendricks v. Mallozzi, No. 9:20-CV-1035 (MAD/ML), 2022 WL 1129887, at *7 (N.D.N.Y. Jan. 14, 2022) (quoting Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995)), report and recommendation adopted, 2022 WL 856885 (N.D.N.Y. Mar. 23, 2022).  Following the Supreme Court's decision in Iqbal, "the Second Circuit concluded that there is no special rule for supervisory liability, and held that a plaintiff must plead and prove that

each Government-official defendant, through the official's own individual actions . . . violated the Constitution." Id. (quotation marks omitted) (quoting Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020). "[T]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." Id. (quotation marks omitted) (quoting Tangreti, 983 F.3d at 618).

In essence, a "[p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that a supervisor behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation.'" Myers on behalf of Est. of Myers v. Davenport, No. 1:21-CV-0922 (LEK/CFH), 2022 WL 3017367, at *5 (N.D.N.Y. July 29, 2022) (quoting Tangreti, 983 F.3d at 618). "Thus, an official's conduct in making and executing policy, or failing to make or execute policy, may satisfy [the] requirement of personal involvement [only] if such conduct meets the elements required to establish an underlying constitutional violation and is undertaken with the required state of mind." Id. (citing Stone #1 v. Annucci, No. 20-CV-1326 (RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) (stating that personal involvement exists "where a plaintiff can establish that a senior official promulgated an unconstitutional policy with a culpable mental state")). "[A] plaintiff may establish a policy-making official's personal involvement by, first, alleging facts from which it may be reasonably inferred the official was responsible for making relevant policies, and thus there is a tangible connection between their policymaking conduct and the alleged

harm." Id. (citation omitted).  "Second, a plaintiff must establish the elements of the underlying claim directly against each defendant." Id.; see also Robinson v. Phillips, No. 9:22-CV-0945 (BKS/DJS), 2023 WL 3170389, at *2 (N.D.N.Y. May 1, 2023).

### A. First Amendment Mail Tampering Claim Against Reardon and Medbury

"Under the First Amendment, prisoners have a right to 'the free flow of incoming and outgoing mail.'" Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006) (per curiam) (quoting Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)).  "Legal mail is entitled to greater protection from interference than nonlegal mail." Burroughs v. Petrone, 138 F. Supp. 3d 182, 210 (N.D.N.Y. 2015) (citation omitted).  "To establish a violation, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail." Rasheen v. Adner, 356 F. Supp. 3d 222, 234 (N.D.N.Y. 2019) (quoting Davis, 320 F.3d at 351)).  "A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge." Burroughs, 138 F. Supp. 3d at 210 (citation omitted).  A mail tampering claim is different than an "access to courts" claim "which protects prisoners' access to mail only derivatively and with respect to given claims." Bradshaw v. Annucci, et al., No. 9:23-CV-0602 (MAD/ML), 2023 WL 4744735, at *15 (N.D.N.Y. July 24, 2023) (citation omitted).

"In light of Tangreti, [a] plaintiff cannot establish [a supervisor's] personal involvement based upon the denial of grievance and/or appeals because it does not plausibly suggest '[t]he factors necessary to establish' a First Amendment . . . claim." Hendricks, 2022 WL 1129887, at *8 (alterations in original) (collecting cases) (quoting Bryant v. Miller, 18-CV-0494 (GTS/CFH), 2021 WL 5095284, at *20 (N.D.N.Y. July 22,

2021), report and recommendation adopted, 2021 WL 4272396 (N.D.N.Y. Sept. 21, 2021); see also Bellezza v. Holland, 730 F. Supp. 2d 311, 317 (S.D.N.Y. 2010) (citation omitted) ("[The p]laintiff has alleged that [the defendants] condoned [the] alleged confiscation of the Settlement Check. These conclusory allegations do not constitute personal involvement and are therefore insufficient to bring a § 1983 claim."); Germano v. Cook, No. 3:21-CV-00550 (JAM), 2021 WL 2810170, at *5 (D. Conn. July 6, 2021) ("But absent allegations of an ongoing violation of a prisoner's constitutional rights, such allegations that supervisors did not do enough *after* a constitutional violation has already occurred is not enough to show personal involvement of the supervisors in the violation of a prisoner's constitutional rights.").

In Darby v. Greenman, the Second Circuit affirmed dismissal of Eight Amendment medical indifference claims because the plaintiff's complaint failed to sufficiently allege personal involvement. See 14 F.4th 124, 130-31 (2d Cir. 2021). The plaintiff alleged "that the Doe Defendants ignored approximately fifteen sick call requests that he submitted 'to follow up on his worsening condition,' and three or four grievances that 'described in detail the worsening pain and suffering he was experiencing[.]'" Id. at 130 (citations omitted). The Court affirmed dismissal for lack of personal involvement because

> [t]o allow Darby's claims against the Doe Defendants to proceed, we would have to assume the elements of liability. Specifically, we would need to assume that (1) the Doe Defendants actually received and read Darby's requests; (2) the requests described the seriousness of Darby's condition in such a way that the Doe Defendants knew or should have known that doing nothing would risk substantial harm; and (3) the Doe Defendants' failure to take action in response to Darby's requests was reckless even though Darby was already seeing a dentist. In other words, we would need to fill in various gaps in the complaint.

9

Id. (footnote omitted).  The Court contrasted Grullon v. City of New Haven, 720 F.3d

133 (2d Cir. 2013), which concerned an Eighth Amendment conditions of confinement

claim.  See id. at 130-31.  In Grullon, the Court "found only that the district court should

have afforded the plaintiff . . . an opportunity to amend because the court could infer

from specific allegations about the plaintiff's sending of a letter 'that the [supervisor

defendant] in fact received the [l]etter, read it, and thereby became aware of the alleged

conditions . . . .'"  Id. at 130-31 (quoting Grullon, 720 F.3d at 141).  Contrarily, in Darby,

the plaintiff "provided no factual basis that would allow [the Court] to infer receipt or

(even assuming receipt) to impute to the Doe Defendants knowledge of the severity of

Darby's condition."  Id. at 131.

Here, plaintiff's complaint fails to sufficiently state a claim against Medbury and

Reardon for a First Amendment mail tampering violation.  Plaintiff alleges that Reardon

and Medbury "known about the guard throwing away my mail I sent them letter and

even tell them but nothing done[.]"  Compl. at 16.  In a letter dated October 23, 2021,

with the header, "Superintendent," plaintiff wrote that only eight or nine of his sixteen

grievances had been filed.  Id. at 25.

First, plaintiff has not alleged that Reardon or Medbury tampered with plaintiff's

mail.  See generally Compl.  His conclusory allegations that that he "sent them a letter

and even" told them about it are insufficient to establish personal involvement because

Tangreti requires allegations showing that the individual defendant caused the specific

constitutional violation.  Compl. at 16; see Boyd v. Doe #1, No. 9:18-CV-1333

(TJM/ATB), 2021 WL 7542409, at *16 (N.D.N.Y. Nov. 30, 2021) (citations omitted)

("[T]he crux of [the] plaintiff's claims against [the defendants] is that they are liable for

failing to sufficiently remedy the wrongs of their subordinates, despite having received

notice from [the] plaintiff of the alleged misconduct.  These contentions closely track the

pre-*Tangreti* standard for establishing personal involvement of a supervisory official;

contemplating personal involvement where an official, after being informed of the

violation through report or appeal, failed to remedy the wrong.  However, in the wake of

*Tangreti* these allegations are insufficient to establish personal involvement of a

supervisory official, and plaintiff has otherwise failed to allege facts plausibly suggesting

[the defendants'] personal involvement in the alleged conduct giving rise to [the]

plaintiff's First and Eighth Amendment claims."), report and recommendation adopted,

2022 WL 823648 (N.D.N.Y. Mar. 18, 2022).

   As to whether Reardon or Medbury could be held liable as policymakers, plaintiff

does not allege that either had any policy making authority.  See generally Compl.; see

also Myers, 2022 WL 3017367, at *5.  Medbury is the Deputy Superintendent of Mental

Health and Reardon is the Superintendent at Marcy C.F.  Dkt. No. 30-1 at 4.  It is

plausible that they have some sort of policy-making authority.  Nevertheless, plaintiff

has failed to state a claim against either individual because even assuming they had

policy-making authority, plaintiff has not alleged that Reardon or Medbury enacted or

promulgated any policies that resulted in anyone tampering with plaintiff's mail.  See

Robinson v. Phillips, No. 9:22-CV-0945 (BKS/DJS), 2023 WL 3170389, at *2 (N.D.N.Y.

May 1, 2023) ("[E]ven assuming [the defendant] was responsible for instituting policies

at Cayuga C.F., the complaint lacks facts suggesting a tangible connection between the

policy of reassigning employees to areas around the facility and the alleged First

Amendment violations. . . .  [T]he complaint lacks sufficient facts to establish that [the

11

defendant] was aware of [the] plaintiff's petition or deliberately 'frustrated or impeded' his efforts to pursue his petition."); see also Rush v. Fischer, 923 F. Supp. 2d 545, 552 (S.D.N.Y. 2013) (citations omitted) ("It is well settled in the Second Circuit that merely receiving letters from an inmate and referring the letters to others does not constitute personal involvement for the purposes of § 1983 liability.  Here, the plaintiff merely alleges that [the defendants] received multiple letters from him and referred the matter to others.  This allegation alone is insufficient to constitute the personal involvement . . . ."), aff'd sub nom. Rush v. Canfield, 649 F. App'x 70 (2d Cir. 2016) (summary order); Lockwood v. Town of Hempstead, No. 16-CV-3756 (SJF/AYS), 2017 WL 9485687, at *11 (E.D.N.Y. Feb. 24, 2017) ("[The p]laintiff's complaint contains no explicit reference to an[y] individuals with final policymaking authority, no such individuals' authority is described, and no allegation is made regarding whether one or more individuals exercised the required 'final policymaking authority' in causing plaintiff's alleged injury. For these reasons, [the p]laintiff fails to demonstrate a Monell violation based upon the acts of an individual with policy making authority."), report and recommendation adopted, 2017 WL 3769253 (E.D.N.Y. Aug. 28, 2017).

       To be sure, in Grullon, the Second Circuit concluded that dismissal without leave to amend on personal involvement grounds against a Warden was inappropriate because there were enough allegations in the record which could have been amended to plead personal involvement.  See Grullon, 720 F.3d at 141-42.  There, the plaintiff provided a copy of the letter he sent to the Warden informing the Warden of certain conditions of confinement.  See id. at 142.  Although there were no allegations that the Warden read the letter or took any actions because of it, there was enough to grant the

12

plaintiff leave to amend because the conditions of confinement claim required knowledge of the conditions and the plaintiff alleged that he informed the Warden of the conditions.  See id.; see also Edwards v. Quiros, 986 F.3d 187, 192 (2d Cir. 2021) (footnote omitted) ("To prevail on an Eighth Amendment conditions-of-confinement claim against prison officials under 42 U.S.C. § 1983, a plaintiff must prove . . .  that 'subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety.'"); see also Tangreti, 983 F.3d at 616 ("[F]or deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it.").

Here, Reardon could plausibly be said to have knowledge of the alleged mail tampering because of the letter sent to the "Superintendent" on October 23, 2021. Compl. at 25.  However, to plead a First Amendment mail tampering claim, plaintiff does not need to allege subjective knowledge of certain conditions, but only that a defendant "regularly and unjustifiably interfered with" plaintiff's mail.  Davis, 320 F.3d at 351; cf. Tangreti, 983 F.3d at 616-17 (citation omitted) (explaining that for violations of the First and Fifth Amendments, "the plaintiff must plead and prove that the defendant acted with discriminatory purpose,' regardless of whether the defendant is a subordinate or a supervisor.  A supervisor's 'mere knowledge of his subordinate's discriminatory purpose' is not sufficient because that knowledge does not 'amount[ ] to the supervisor's violating the Constitution.'").  Plaintiff has not alleged that Reardon took any unjustifiable and regular actions that interfered with plaintiff's mail.  See Darby, 14 F.4th at 130 (affirming dismissal on personal involvement grounds because the Court cannot "fill in

various gaps" in the complaint where the plaintiff did not allege "the elements of liability"

for the relevant constitutional claim); <u>see</u> <u>also</u> <u>Harden v. Badger</u>, No. 19-CV-3839 (VB),

2020 WL 7211295, at *7 (S.D.N.Y. Dec. 7, 2020) (citations omitted) ("As for [the

sergeant defendant], [the] plaintiff alleges only that he did not receive 'any mail from

[his] family for two months' and that [the defendant] 'was caught going through the mail

on March 7, 2017 and she had [his] mail in her possession.'  Even liberally construed,

these allegations fail to support a claim based on interference with the free flow of mail.

Specifically, [the] plaintiff identifies no specific action taken by [the defendant] to

withhold or tamper with [the] plaintiff's mail.").  Accordingly, although it could be inferred

that Reardon and Medbury have some level of policy-making authority and that

Reardon was aware of plaintiff's complaints, plaintiff has failed to state a claim because

he does not allege that Reardon or Medbury enacted any policies affecting his mail or

that either individual took actions affecting it.  It is recommended that the motion to

dismiss be granted as to the First Amendment mail tampering claims against Medbury

and Reardon.

### B.  Eighth Amendment Sexual Abuse Claim

Plaintiff alleges that he was sexually abused by Ms. Davis and Ms. Brown, who

were "mental health staff."  Compl. at 6, 16.  Plaintiff states that he was forced to

masturbate in front of Ms. Davis, and he watched her let another prisoner do the same.

<u>See</u> <u>id.</u> at 16.  "When [he] went back to [his] cell [he] reported it to Sgt. Carpen[t]er[,but]

he did no investigation."  <u>Id.</u>  Weeks later, Ms. Davis asked plaintiff to "see it" and he

began a sexual relationship with Ms. Brown, even though he did not want to.  <u>Id.</u>

14

"Because sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims." Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997). Specifically, "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015). "[A] single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." Id. "The principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat-frisk or strip search, or by contrast whether it was taken to arouse or gratify the officer or humiliate the inmate." Id. 257-58.

 As explained, to state a constitutional violation under § 1983, plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Tangreti, 983 F.3d at 618 (quoting Iqbal, 556 U.S. at 676); see supra at 6. "[A] 'failure to remedy' theory of liability is not available against a supervisor with respect to discrete and completed violations such as [] alleged sexual assault . . . ." Anthony v. New York, No. 9:18-CV-0849 (GLS/CFH), 2019 WL 111041, at *3 (N.D.N.Y. Jan. 4, 2019) (citation omitted).

Plaintiff alleges that he reported Ms. Davis' sexual assault to Carpenter, but that "he did no investigation." Compl. at 16. Plaintiff does not more specifically allege when, how, or what he communicated with Carpenter. See id. There are no grievances attached to the Complaint which address the alleged sexual assault. See generally

Compl.  There are also no allegations from which the Court could infer that Carpenter had any policy making authority and plaintiff has not alleged that Carpenter was personally involved in the creation or maintenance of any policies and that caused plaintiff's injuries.  See generally id.; see also Pusepa v. Annucci, No. 17-CV-1765 (RA), 2019 WL 690678, at *5 (S.D.N.Y. Feb. 19, 2019) (concluding that the [p]laintiff "has plausibly alleged that the Supervisory Defendants bore the responsibility for 'creat[ing] . . . or allow[ing] the continuance of" policies and customs that allowed sexual violence at [Bedford Hills Correctional Facility] to occur."); Tangreti, 983 F.3d at 612 (ordering that summary judgment be entered in favor of the supervisor defendant on a deliberate indifference claim because "the pretrial record does not permit the inference that [the defendant] had subjective knowledge of the risk of the sexual abuse inflicted on Tangreti and that she decided to disregard that risk.").  Plaintiff's failure to plead that Carpenter had "intentional contact with an inmate's genitalia or other intimate area[]" forecloses his claim.  Crawford, 796 F.3d at 257; see also Myers, 2022 WL 3017367, at *5 (explaining that even under a policy making theory, "a plaintiff must establish the elements of the underlying claim directly against each defendant.").

As the only allegation against Carpenter is that he did "no investigation," defendants note that there is no constitutional right to an investigation.  See Dkt. No. 30-1 at 9-10.  The undersigned agrees.  "The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials."  Banks v. Annucci, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014).  "The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the

individual." Id.; see also Bradshaw v. Marshal, No. 9:21-CV-0826 (MAD/CFH), 2022 WL 1491642, at *7 (N.D.N.Y. Mar. 11, 2022) (collecting cases to support contention that inmates do not have constitution right to an investigation), report and recommendation adopted sub nom. Bradshaw v. Welch, 2022 WL 1124900 (N.D.N.Y. Apr. 15, 2022). As plaintiff has no constitutional right to an investigation, plaintiff has failed to state a claim upon which relief could be granted. See Anthony, 2019 WL 111041, at *3 ("[T]o the extent plaintiff has named . . . defendants based on his allegation that his sexual assault claim was not properly investigated, prisoners do not have a constitutional right to an investigation."); Bright v. Annucci, No. 18-CV-11111 (NSR), 2021 WL 4461682, at *16 (S.D.N.Y. Sept. 28, 2021) (dismissing claim alleging that the defendant failed to investigate the plaintiff's sexual assault allegations); Harris v. Skinner, No. 99-CV-6393 (CJS), 2003 WL 22384794, at *4 (W.D.N.Y. Sept. 4, 2003) (granting motion for summary judgment because the "plaintiff alleges that Shannon did not investigate the alleged assault, and that he did not reprimand anyone for his actions. However, plaintiff has no constitutional right to an investigation of an individual who has committed an assault on him unless it is shown that the omission or inadequacy of the investigation itself resulted in the deprivation of a constitutional right."). As plaintiff has not alleged that Carpenter personally violated plaintiff's Eighth Amendment right to be free from sexual abuse, it is recommended that the motion to dismiss be granted, and the Eighth Amendment claim against Carpenter be dismissed.

### IV.  Leave to Amend

"As a general matter, the district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion."  Elleby v. Martucello, No. 9:16-CV-1335 (MAD/DEP), 2018 WL 3769965, at *4 (N.D.N.Y. Aug. 9, 2018) (quotation marks omitted) (quoting Shomo v. New York, 374 F. App'x 180, 182 (2d Cir. 2010) (summary order)).  "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."  Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (citations and quotation marks omitted).  "A *pro se* complaint should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and quotation marks omitted).  "However, 'leave to amend a complaint may be denied when amendment would be futile.'"  Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (quoting Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006)).  Here, plaintiff does not oppose the motion to dismiss, and he does not seek leave to amend his complaint.  However, in deference to his pro se status, the undersigned recommends dismissing the claims underlying the motion to dismiss without prejudice and with leave to amend.  See Levinson v. United States Fed. Bureau of Prisons, Metro. Corr. Ctr. - New York, 594 F. Supp. 3d 559, 567 (S.D.N.Y. 2022) ("[W]hen a motion to dismiss is granted, the usual practice is to dismiss the claims without prejudice and grant plaintiff leave to amend the complaint.").

## V. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that the motion to dismiss (Dkt. No. 30) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's First Amendment mail tampering claims against defendants Reardon and Medbury, and Eighth Amendment sexual abuse claim against defendant Carpenter be **DISMISSED without prejudice and with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[7]

---

[7] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).

Dated:  August 7, 2023
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge